YARRUT, Judge
(dissenting).
As stated in the majority opinion, this is a contest for the tutorship of three minor children, ages 9, 6 and 3 years, respectively, between Mrs. Emma Hill Mounce, maternal grandmother, Mrs. Edna Quave, paternal grandmother, and Mrs. Elsie Quave Willie, paternal aunt. Both parents, Mrs. Dolores Mounce Quave and Douglas Quave, died in separate automobile accidents; the father in 1966, one year after the death of his wife. After the death of their mother, their father was qualified as tutor, and their paternal grandmother as under-tutrix.
After the death of the father, the children’s maternal grandmother, Mrs. Emma Hill Mounce, was appointed provisional tu-trix by order of the Twenty-First Judicial District Court, Tangipahoa Parish. On April 21, 1967, the Twenty-First Judicial District Court held the appointment of Mrs. Mounce was invalid.
On April 24, 1967, the Twenty-Fourth Judicial District Court, Parish of Jefferson, appointed Charles Willie, paternal uncle, as provisional tutor, and placed the children in his home. Mrs. Edna Quave, paternal grandmother, then filed an application to be appointed tutrix. Oppositions were filed by Mrs. Emma Hill Mounce, maternal grandmother, and Mrs. Elsie Quave Willie, paternal aunt.
The Court found that Mrs. Quave, age 55 and divorced, lived in a small home in a poor neighborhood in Hammond, Louisiana, which home she shared with two married daughters; and, because of her nervous condition, was somewhat hampered in caring for the children.
Regarding Mrs. Mounce, the Court found her age to be 52, a divorcee, and living in a rural area six miles from Hammond, Louisiana, which home she shared with a 14-year-old daughter, attending school, and a daughter who was employed. Her income consisted of alimony of $75.00 per month, plus help from her employed daughter, with an added income from baby-sitting and $3.00 a week doing laundry for a neighbor. Her religious beliefs restricted the recreational activities of the children.
*265 The Court further found the children would get better care with the Willies, as tutrix and under-tutor; Mrs. Willie being 34 years of age and Mr. Willie 40 years of age. The children would then have a foster mother and father. The Willies live in a rural neighborhood, in a nice comfortable home, with two children of their own, ages 6 and 12, and an adequate income.
From the District Judge’s award of the tutorship to the paternal aunt and uncle, Mrs. Mounce has taken this appeal.
Counsel for Mrs. Mounce contends that the Court disregarded Arts. 263, 266 and 267 of the Louisiana Civil Code, which grants to a grandmother a preference over an aunt in a contest for the tutorship.
LSA-C.C. Art. 263 reads:
“When a tutor has not been appointed to the minor by father or mother dying last, or if the tutor thus appointed has not been confirmed or has been excused, then the judge ought to appoint to the tutorship the nearest ascendant in the direct line of the minor.”
LSA-C.C. Art. 266 reads:
“The grandmother of the minor is the only woman who has a right to claim the tutorship by the effect of the law, but she is not compelled to accept it.”
LSA-C.C. Art. 267 reads:
“If the minor has no ascendant in the direct line, the tutorship shall be given to the nearest of kin in the collateral line.
“If there are two or more relations in the collateral line, the judge shall appoint one of them as tutor.”
LSA-C.C. Art. 263 gives the Judge latitude in designating who should be appointed tutor, being directory rather than mandatory. Counsel for Mrs. Mounce contends an ascendant has a right to claim a tutorship over any collateral, citing LSA-C.C. Art. 266.
Counsel for Mrs. Mounce also contends the judgment deprived the grandmother of this right. There is only one case in our jurisprudence which discusses the right of a party to the tutorship. In Succession of Haley, 49 La.Ann. 709, 22 So. 251, the Supreme Court held, in a contest between a natural mother and a testamentary tutor, viz:
“ * * * It is true that the natural mother, as a general rule, is declared in Article 256 of the Revised Civil Code to he entitled, under the circumstances therein stated, to be ‘of right’ the tutrix of her child; but, though she be entitled to that ‘of right,’ she is not necessarily to be appointed as ‘of course.’ Even the legitimate child is not necessarily to be placed under the tutorship of its father or its mother. The facts of a special case would make it sometimes improper that it should be so placed * * *
We think it is clear the Court inferred that the best interests or welfare of the minors should be the primary concern of the Court. Counsel for Mrs. Mounce also contends the statute should be strictly construed in order to limit family quarrels, and that the children are harmed by litigation over their tutorship. The Supreme Court in Succession of Haley, 50 La.Ann. 840,24 So. 285, stated:
“ * * * It is our duty to look after the good of the child, rather than the wishes or feelings of the mother * * * ”
Further, the Trial Judge was present to observe the physical and mental condition of both grandmothers. The Court evidently was doubtful of their ability to cope with the duties of properly raising three active youngsters. LSA-C.C.P. Art. 4231, par. (6), inter alia, reads:
“No person may be appointed tutor who is:
******
(6) A person who, on contradictory hearing, is proved to be incapable of performing the duties of the office, or to be *266 otherwise unfit for appointment because of his physical or mental condition or bad moral character.”
Counsel for Mrs. Mounce contends the evidence preponderates in favor of Mrs. Mounce. However, the testimony of witnesses in her behalf will show that each belong to the same Church, or related in some manner to each other. It is also contended that the appointment of Mrs. Willie over Mrs. Mounce was due to her poverty, her religion, her age, the lack of recreational facilities, and the lack of a man in the household, and that this was reversible.
All of the facts in regard to the competency of the grandmothers were considered by the Trial Judge. He found that a cu-mulation of all factors disqualified them under LSA-C.C.P. Art. 4231, par. (6); and gave as his “Reasons for Judgment,” the following:
“The application of three relatives of the minor children, Kent, Robert and Michael Quave, have been made to this Court, each seeking to be named legal tutrix of said minors.
“The parents of the minor children met separate, tragic deaths in automobile accidents and their children, aged 9, 6 and 3 years respectively as named above, have been the subject of much concern and attention in the large families of the deceased parents.
“The applicants are:
1. Mrs. Edna Quave, the paternal grandmother.
2. Mrs. Emma H. Mounce, the maternal grandmother.
3. Mrs. Elsie Quave Willie, a paternal aunt.
“The Court entertained this case through three full trial days and heard a multitude of'witnesses. All of the applicants live in the Hammond area of the state and the backgrounds (ethnic, religious, financial and moral) of each applicant at times appears common to and at other instances greatly divergent from the other applicants.
“Mrs. Quave and Mrs. Mounce have an equal priority under Articles 263, et seq., of the Civil Code. Their capabilities and incapabilities were testified to at great length.
“Mrs. Quave is 55 years old and is divorced. She lives in a small home in a rather poor and dilapidated neighborhood. By her own admission, she would not want to rear the children in this house and indicated the intention to move into a new home if she obtained the tutorship sought herein. There is some evidence that the home life is not altogether satisfactory, due to Mrs. Quave sharing her home with two married daughters. The record also reflects a nervous condition of Mrs. Quave . which necessitated her moving back to Hammond from Metairie prior to her son’s death, her home in Metairie, at the time, being that of her now deceased son, the parent of the minors in this suit.
“Mrs. Mounce is 52 years old and lives in a semi-rural area, six miles from Hammond. She is also divorced and lives in her three bedroom home, shared by her daughter, who plans to marry in the near future. (The record shows that Mrs. Mounce testified she lives with two of her children, a 14-year old daughter who attends school, and an older daughter who is employed.) Mrs. Mounce supplements the small alimony received from her divorced husband by baby-sitting for her daughter who has four children including a five month old baby. She also washes clothes for neighbors. (The record shows that Mrs. Mounce does weekly wash for one neighbor, for which she is paid $3.00.) Her life is simple and conducted according to the rigid religious beliefs of a non-denominational order or group to which she belongs.
“The Court is of the firm opinion, that the apparent mandate of the Civil Code *267 granting a superior right to ascendants over collaterals should not contravene the ultimate good and best interests of the minors, especially in view of the physical and emotional limitations of said ascendants.
“The grandmothers are each of such an age and of such physical and emotional condition, that the Court has a strong doubt of their ability to cope with the duties of properly rearing three active youngsters. Although, neither is infirm, there is ample evidence in the record to indicate that the children would not receive the best that is offered in this case. The children would be reared, in either case, in a fatherless home supervised by an elderly lady. Each grandmother has good intentions and the Court does not mean to imply that the children would be mistreated in either case. The Court is of the opinion that Mrs. Quave’s nervousness and the physical surroundings of her home disqualify her. The Court also is of the opinion that Mrs. Mounce is burdened with the care of four grandchildren and washing for neighbors as a means of existence, and these factors, added to the stern precepts of her religion, which forbid normal recreational activities, disqualify her. These conclusions are reached in the light of Article 4231(6) of the Code of Civil Procedure.
“The applications of Mrs. Elsie Quave Willie, as tutrix, and her husband, Charles Willie, as under-tutor, are considered by the Court as being most advantageous and favorable to the minors.
“The advantages are multifold. The primary advantage is that of Mr. Willie’s presence in the home. The children will have a father in the person of Mr. Willie, with whom the Court was impressed as a solid, hard working, morally correct person. His position of employment would permit the probable continuance of the respectable standard of living he now provides for his family. His wife, Mrs. Elsie Quave Willie, is apparently sincerely devoted to her home, her children and the Quave children.
“Prior to her death, Mrs. Dolores Quave, the mother of said minors, held a close relationship with Mrs. Willie. The Willie home is quite suitable and comfortable and the Quave children will get a better chance at life if reared in this home. Under Article 4067 of the Code of Civil Procedure, and the standards thereby adjured, the Court is of the opinion that the tutorship and custody of the Quave children should be granted to Mrs. Elsie Quave Willie and Mr. Charles Willie named as under-tutor.”
As I cannot find any basis to disagree with the District Judge, and conclude that his judgment is correct and should be affirmed, I must respectfully dissent.